UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Soren Stevenson,<br><br>　　　　Plaintiff,<br><br>v.<br><br>John Doe, *acting in his individual capacity as a Minneapolis Police Officer*;<br>John Does 2-6, *acting in their individual capacities as Minneapolis Police Officers*;<br>John Does 7 and 8, *acting in their individual and official capacities as supervisory Minneapolis Police Officers*;<br>Medaria Arradondo, *acting in his individual and official capacities as the Minneapolis Chief of Police*; and<br>the City of Minneapolis,<br><br>　　　　Defendants. | Case No. 20-cv-02007 (SRN/TNL)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Andrew J. Noel, Kathryn H. Bennett, Marc Betinsky, and Robert Bennett, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for Plaintiff.

Heather Passe Robertson, Kristin R. Sarff, and Sharda R. Enslin, Minneapolis City Attorney's Office, 350 South Fifth Street, Suite 210, Minneapolis, MN 55415, for the City of Minneapolis and Medaria Arradondo.

SUSAN RICHARD NELSON, United States District Judge

　　This matter is before the Court on the Motion to Dismiss [Doc. No. 8] filed by the City of Minneapolis and Medaria Arradondo (collectively, "the City Defendants"). Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS in part** and **DENIES in part** the City Defendants' motion.

1

## I. BACKGROUND

On May 25, 2020, George Floyd tragically died in the custody of the Minneapolis Police Department, triggering widespread demonstrations across the country. In the following days, protesters took to the streets of Minneapolis—and in some cases, there were riots, as looters and arsonists embedded themselves in groups of otherwise peaceful protesters. This litigation—and several similar lawsuits—arises from the state and municipal response to the challenging circumstances of the George Floyd protests.

Plaintiff Soren Stevenson is a Minneapolis resident who participated peacefully in the protests. Stevenson alleges that members of the Minneapolis Police Department ("MPD") responded to the protests with excessive force, and deployed tear gas, rubber bullets, and other less-lethal munitions in violation of protesters' constitutional rights. Stevenson alleges that, as a result of the officers' conduct, he was struck by a 40 mm blunt-impact projectile, resulting in the loss of his left eye. (Compl. [Doc. No. 1], at ¶ 33.) Stevenson seeks relief under 42 U.S.C. § 1983 for violations of his First, Fourth, and Fourteenth Amendment rights.

Defendants are the City of Minneapolis; Medaria Arradondo, in his individual capacity and in his capacity as the MPD's Chief of Police; and the John Doe officers involved in the use of force against Stevenson. The City Defendants move to dismiss the claims against them, arguing that the Complaint fails to state a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and that Stevenson's claim against Chief Arradondo in his individual capacity is not well-pleaded.

Against this backdrop, the Court turns to the record pertinent to the City Defendants' motion. At this stage, the Court accepts the facts alleged in the Complaint as true, views those allegations in the light most favorable to Stevenson, and may generally consider only the facts alleged in the pleadings. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013); *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).

Following George Floyd's death, protests began across Minneapolis, and continued through May 31, 2020. (Compl. ¶¶ 12-13.) Although some of the protests "caused severe destruction," it is alleged that the destructive protests "occurred during nighttime hours," and "the vast majority of [daytime] activity was peaceful and aimed at effective change." (*Id.* ¶¶ 14-15.) However, Stevenson alleges that MPD officers subjected protesters—even those involved in peaceful daytime protests—to excessive force, including the improper use of tear gas, 40 mm blunt-impact projectiles, and other "less-lethal" munitions. (*Id.* ¶ 16.) Stevenson alleges that several Minneapolis policymakers publicly acknowledged the "disproportionate and escalating force" early on in the George Floyd protests. (*Id.* ¶¶ 17-19.)

On May 31, 2020, Stevenson joined a protest near Interstate 35W and University Avenue in Minneapolis. (*Id.* ¶ 25.) Stevenson alleges that the group was peaceful, and many held their hands up. (*Id.* ¶ 31.) MPD officers assembled opposite the group, equipped with 40 mm projectile launchers. (*Id.* ¶¶ 32-33.) Stevenson alleges that the crowd was not chaotic and did not contain rioters or looters, that the 8:00 p.m. curfew set by Governor Tim Walz had not yet begun, and that Stevenson had not committed a crime, was unarmed, and did not display any aggression toward MPD officers. (*Id.* ¶¶ 35, 37-41.) Without

warning, MPD officers allegedly fired less-lethal projectiles into the crowd, ostensibly to disperse the protesters. (*Id.* ¶¶ 29-30, 32.) It is alleged that MPD officers gave no warnings about the potential use of force, and gave neither directions nor commands to Stevenson. (*Id.* ¶¶ 42-44.) Nonetheless, an MPD officer allegedly fired a 40 mm less-lethal round at Stevenson, striking him in the face and causing extensive damage, ultimately resulting in the loss of his left eye. (*Id.* ¶¶ 33-34, 45-56.)

Stevenson alleges that the John Doe officer's shooting violated several MPD policies on the use of force, including policies that (1) reserve the use of 40 mm launchers for the "incapacitation of a violent or potentially violent subject," (2) prohibit the use of 40 mm launchers for crowd-management purposes, and (3) instruct officers to avoid firing toward the facial area unless deadly force is justified. (*Id.* ¶¶ 60-67.) Stevenson also alleges that MPD officers did not provide medical assistance to him and did not document the use of force, in violation of department policies. (*Id.* ¶¶ 68-69.)

Furthermore, Stevenson alleges that the John Doe officer's misconduct was caused by MPD customs endorsing the use of excessive force against protesters and encouraging officers to cover up excessive uses of force. (*Id.* ¶¶ 92-101, 185.) It is alleged that the MPD has permitted officers "to get away with policy and constitutional violations without fear of repercussion for decades," and that the failure to report uses of force during the George Floyd protests was widespread. (*Id.* ¶¶ 79-80.) As an example of this conduct, Stevenson alleges that another protester, Ethan Marks, was blinded when an MPD officer fired a tear gas canister directly into Marks's eye while Marks peacefully protested during daytime hours on May 28, 2020. (*Id.* ¶ 81.) Moreover, Stevenson alleges that MPD officers have a

culture of obstructing investigations into officers' use of force by, for example, failing to report uses of force, refusing to aid in investigations into uses of force, and failing to discipline officers who use excessive force. (*Id.* ¶¶ 93-97.) As a consequence of this culture, MPD officers allegedly feel "free to flagrantly violate subjects' constitutional rights" and "know that they can act . . . with complete impunity." (*Id.* ¶¶ 92, 99.) Because of this alleged culture, Stevenson asserts that he has been unable to discern the identity of the officer who shot him, despite extensive attempts to review the reports and body-camera footage that MPD policies allegedly required the officers involved to create and preserve. (*Id.* ¶¶ 110-26.)

## II.  DISCUSSION

### A.  Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," as well as statements of counsel at oral argument that raise new facts not alleged in the pleadings. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999). The Court may, however, "consider the pleadings

themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### B.     The City Defendants' Motion to Dismiss

The City Defendants argue that the Complaint fails to state a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and that Stevenson's claim against Chief Arradondo in his individual capacity is not well-pleaded. The Court will begin with Stevenson's *Monell* claim.

#### 1.     *Monell* Claim Against the City Defendants

Under *Monell*, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Rather, a municipality may be liable for a police officer's constitutional violation only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* "Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an

unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016) (citing *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013)).

The core of Stevenson's claim is that an unofficial custom was the moving force behind MPD officers' allegedly unconstitutional use of force against him. "To trigger municipal liability based on [an] unofficial municipal custom, the custom must be so pervasive among non-policymaking employees of the municipality that it effectively has the force of law." *Id.* at 986 (citing *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998)). In order to establish a *Monell* custom claim, the plaintiff must show:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (quotation omitted). Because the City Defendants do not appear to dispute that Stevenson has plausibly alleged that his injuries were caused by the asserted custom, the Court need only examine the first two elements.

### a. Continuing, Widespread, and Persistent Pattern

*Monell* liability for an unofficial custom requires that the custom "be demonstrated by a continuing, widespread, and persistent pattern of unconstitutional misconduct." *Bolderson*, 840 F.3d at 986 (citing *Ware*, 150 F.3d at 880). "Although an unconstitutional

7

custom claim cannot be predicated on a single act, the Eighth Circuit has not determined whether some other, minimum number of incidents is required as evidence of custom." *Tirado v. City of Minneapolis*, No. 20-cv-1338 (JRT/ECW), 2021 WL 679261, at *5 (D. Minn. Feb. 22, 2021) (citations omitted). In addition to the number of incidents of misconduct, the Court must also "consider the timeframe or duration of the incidents when assessing whether the pattern was widespread." *Id.* at *6.

Stevenson alleges that the City Defendants have an unconstitutional custom endorsing the use of excessive force. (Compl. ¶ 185.) To evidence the alleged custom, Stevenson points to his own experiences on May 31, 2020, to the incident involving Ethan Marks on May 28, 2020, and to general allegations of excessive force during the George Floyd protests and in decades past. (*Id.* ¶¶ 16-19, 79-81.) The City Defendants argue that the alleged incidents are too few in number, and too close in time, to plausibly allege a continuing, widespread, and persistent pattern.

It is true that courts have dismissed *Monell* claims based on more occasions of misconduct than alleged here, including where the misconduct was spread across a greater time period, at summary judgment. *See Tirado*, 2021 WL 679261, at *6 (examining cases). But at the pleading stage, "[e]ven if a plaintiff cannot identify the full scope of an alleged custom or policy, the key to surviving dismissal is that the 'complaint must allege facts which would support the existence of an unconstitutional policy or custom.'" *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2015).

The Court finds that the Complaint alleges facts which would support the existence of an unconstitutional policy or custom. Stevenson alleges at least one similar incident of

misconduct occurring during the George Floyd protests, and generally alleges the use of excessive force by MPD officers during the George Floyd protests and in the past. In *Tirado*, this Court recently found that a journalist plausibly alleged a *Monell* claim against the City Defendants, where the journalist alleged only ten instances of misconduct during the George Floyd protests. *Tirado*, 2021 WL 679261, at *6–7. As in *Tirado*, the Court finds that Stevenson's allegations of excessive force during the George Floyd protests plausibly allege a continuing, widespread, and persistent pattern of unconstitutionally excessive force exercised against protesters like Stevenson. Although courts have dismissed *Monell* claims premised on more incidents of misconduct than the Complaint identifies here *at summary judgment*, Stevenson's allegations suffice to "support[] the existence of an unconstitutional policy or custom." *Sagehorn*, 122 F. Supp. 3d at 867; *see also Kohl v. Casson*, 5 F.3d 1141, 1148 (8th Cir. 1993) (observing that the Supreme Court has held that "requiring a plaintiff to allege particular instances of similar constitutional violations in order to defeat a motion to dismiss for failure to state a claim is inconsistent with the 'liberal system of "notice pleading" set up by the Federal Rules.'" (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993))).

And the Court finds that Stevenson has plausibly alleged that the City Defendants had notice of the asserted custom. Stevenson alleges that the MPD's use of excessive force during the George Floyd protests was well-documented, and the Complaint includes public comments made by several municipal policymakers regarding the MPD's use of force early on in the protests. (*See* Compl. ¶¶ 17-20.) Thus, the facts alleged permit the reasonable inference that the time period of the George Floyd protests—even without considering

9

Stevenson's allegations of excessive force prior to the protests—was sufficiently long for the City Defendants to take notice of the MPD officers' alleged misconduct and change course. *See Tirado*, 2021 WL 679261, at *7 (noting that a custom is temporally persistent when the alleged time period is sufficiently long to "permit notice of the unlawful practice," and finding that the plaintiff plausibly alleged that the City Defendants had notice of MPD officers' conduct during the George Floyd protests).

### b. Deliberate Indifference or Tacit Authorization

In order to establish *Monell* liability, a plaintiff must also prove that the municipality showed deliberate indifference to or tacitly authorized police officers' misconduct after having notice of that misconduct. *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). "'Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability[,]' but the complaint must also allege that the defendant 'made a deliberate choice' to ignore alleged violations." *Tirado*, 2021 WL 679261, at *7 (first quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013), then quoting *Johnson*, 725 F.3d at 829).

The Court finds that Stevenson has plausibly alleged that the City Defendants had notice of MPD officers' use of less-lethal munitions on peaceful protesters during the George Floyd protests. To be sure, the Complaint does not include specific allegations regarding the City Defendants' command structure and mechanisms for transmitting information regarding the protests to municipal policymakers. *Cf. id.* at *8 (noting that the plaintiff "explains how the City allegedly became aware of" the alleged incidents of misconduct "through broad reporting by news outlets, the City's own social media

monitoring efforts, and direct outreach by media"). Yet, as noted above, the Complaint includes several public comments made by municipal policymakers criticizing the MPD's use of force early on in the protests. (*See* Compl. ¶¶ 17-20.) Moreover, the City Defendants' own characterization of the protests as "massive civil unrest" that had "seized the city" undercuts the claim that municipal policymakers did not have notice of the protests and the MPD's response to it. (Mem. in Supp. of Mot. to Dismiss [Doc. No. 10], at 10.) Although the Complaint's factual allegations regarding the City Defendants' deliberate choice to ignore the MPD officers' conduct are relatively sparse, the Court declines, at this early stage, to dismiss this lawsuit on that basis. *See Tirado*, 2021 WL 679261, at *8 ("Although Tirado does not allege specific facts about the City's deliberation or decision to ignore such incidents, this is likely too much to ask at the pleading stage, when all that is required is a 'possible custom.'" (citing *Sagehorn*, 122 F. Supp. 3d at 867)).

The Court acknowledges that the City Defendants faced unprecedented unrest during the George Floyd protests. Nonetheless, the Court finds that the Complaint plausibly alleges that an unofficial custom endorsing the use of excessive force[1] against peaceful protesters existed at the time of the George Floyd protests, and that the custom was either

---

[1] The City Defendants additionally argue that Stevenson's allegation that the MPD has a custom of failing to report uses of force fails to state a *Monell* claim. In the Court's view, the Complaint does not assert a separate *Monell* claim based on such a custom. Rather, Stevenson alleges that the MPD's "blue wall of silence" and custom of failing to report uses of force contributed to the MPD's custom of using excessive force. That is, Stevenson asserts that the two customs operated in tandem to cause his injuries. The Court therefore need not consider whether the Complaint states a separate actionable *Monell* claim based on the failure to report uses of force.

11

tacitly authorized by municipal policymakers or policymakers were deliberately indifferent to it. Accordingly, the Court denies the City Defendants' Motion to Dismiss with respect to Stevenson's *Monell* claim.

### 2.     Individual Capacity Claim Against Chief Arradondo

Next, the Court turns to the City Defendants' motion to dismiss Stevenson's claim against Chief Arradondo in his individual capacity. Stevenson alleges that Chief Arradondo failed to enforce the MPD's policies regarding reporting the use of force, failed to discipline officers who used excessive force, and failed to adequately supervise the John Doe officers involved in Stevenson's injuries. A supervisor may be individually liable under § 1983 "if he directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citing *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994)). A plaintiff asserting a supervisory liability claim "must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts," which "requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Id.* (citations omitted). Because § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights," Stevenson "must allege specific facts" regarding Chief Arradondo's "personal involvement in, or direct responsibility for," the deprivation of his rights. *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)).

The Court finds that Stevenson has not plausibly alleged facts supporting a supervisory liability claim against Chief Arradondo. Stevenson's allegations regarding Chief Arradondo's enforcement of MPD policies and discipline imposed after instances of misconduct speak to Chief Arradondo's liability in his official capacity as Chief of Police—not his individual liability under § 1983. And Stevenson has not alleged any facts specifically related to Chief Arradondo's personal involvement in the John Doe officers' supervision and training. Stevenson does not allege, for example, that Chief Arradondo personally trained or supervised any of the John Doe defendants. In essence, Stevenson's claim is that because Arradondo is the Chief of Police, he bears supervisory responsibility for all officers in the MPD, and may therefore be held individually liable for constitutional violations committed by any MPD officer. In the Court's view, this theory stretches § 1983 supervisory liability too far. *Cf. Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (noting that "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement" for purposes of an individual capacity § 1983 claim).

Because Stevenson has not plausibly alleged that Chief Arradondo directly authorized the use of force against him or was personally involved in the supervision and training of the MPD officers allegedly involved in Stevenson's injuries, the Court finds that the Complaint does not state a claim against Chief Arradondo in his individual capacity and dismisses that claim without prejudice.

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that the City Defendants' Motion to Dismiss [Doc. No. 8] is **GRANTED in part** and **DENIED in part**, and Plaintiff's claim against Minneapolis Chief of Police Medaria Arradondo in his individual capacity is dismissed **without prejudice**.

**IT IS SO ORDERED.**


Dated: March 11, 2021                               s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge