# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Soren Stevenson,

Civ. No. 20-2007 (SRN/TNL)

Plaintiff,

v.

**DECLARATION OF SOREN STEVENSON**

Benjamin Bauer, acting in his individual capacity as a Minneapolis Police Officer, *et al.*,

Defendants.

I, Soren Stevenson, hereby depose and state as follows:

1. My name is Soren Stevenson and I am the Plaintiff in the above-entitled action due to being shot in the left eye with a 40-mm blunt impact projectile (BIP) on May 31, 2020 in Minneapolis, Minnesota. I sustained serious and permanent injuries as a result of the shot.

2. I submit this Declaration in support of Plaintiff's Motion for Award of Costs, Including Reasonable Attorneys' Fees, under 42 U.S.C. § 1988.

3. With the help of Ronn Kreps, a family friend, I contacted the law firm of Robins Kaplan, LLP (RK) in June 2020 to help me prosecute the violation of my civil rights by officers of the Minneapolis Police Department (MPD), who were then unknown to me.

4. Shortly after I was shot in the left eye, I met with members of the RK civil-rights team, including Robert (Bob) Bennett, Andrew Noel and Kathryn

Bennett, as well as Nick Adler, one of RK's private investigators. From that day on, Bob's team assisted me in the prosecution of my claims against those responsible for the May 31, 2020 incident.

5. I formally retained Bob and his team through an agreement that included a split fee arrangement with Mr. Kreps. *See* Exhibit 1 attached hereto.

6. I selected the civil-rights team at RK because, among other reasons, it is staffed with very experienced trial lawyers who routinely handle excessive-force cases within their overall civil-rights practice. They are known as competent, effective lawyers well-suited to prosecute cases such as mine, and my experiences with them only confirmed that reputation is well-earned and accurate.

7. RK's civil-rights team has particularized experience in Section 1983 cases involving deadly force. I am aware the team was involved in the then-record breaking settlement of former MPD officer Mohamed Noor's homicide of Justine Ruszczyk, an unarmed and barefoot woman wearing pink pajamas who had called the police regarding a possible sexual assault (settled for $20 million). The team handled *Castile v. Village of St. Anthony*, where Philando Castile was shot and killed by Jeronimo Yanez after he informed the officer he had a permit to carry (settled for $2.99+ million). They also handled the case of *Sieff v. City of Chaska*, where Dawn Pfister was shot and killed by Brady Juell of the Chaska

2

Police Department after she obtained a small folding knife with at 3 ¼ inch blade from a man who had held her hostage and menaced her with the same knife (settled for $1.75 million). And, most recently, the team was involved in *Olthoff v. Warnygora,* where a CERT Team call-out led to the shooting of the unarmed Shawn Olthoff, who had put his hands in the air as commanded by police, rendering him an incomplete quadriplegic (settled for $6.2 million).

8. RK's civil-rights team's experience in the areas of use of force and deadly force includes trial, appellate and prosecution of cases to settlement. The team has received many individual and group awards recognizing their success in this area of the law.

9. In the almost two years since I was shot, Bob and the RK civil-rights team worked diligently on my case. This was necessary because: a) it became clear that the MPD had not investigated my shooting; and b) MPD persisted in their demands that I name my own shooter, while simultaneously hamstringing our ability to use the evidence of the incident in the manner the team saw fit. Nonetheless, my attorneys and their team worked to piece together the facts surrounding my shooting which, as I understand it, took a great many hours of careful review of both documents and body worn camera (BWC) evidence. I believe the identification of Defendant Benjamin Bauer as my shooter was crucial to the resolution of this case.

10. Further, I am aware that RK's analysis and work included the following:

    a. Obtaining, dissecting and analyzing all available records regarding the incident and involved officers, which came in large batches produced over a period of months;

    b. Obtaining, dissecting and analyzing all available medical and billing records with regard to the injuries I sustained and the treatment therefore;

    c. Researching MPD policies and procedures, the 40-mm launcher, the Eotech optical sight, the type of BIP round fired at me and the timeline of events after the murder of George Floyd;

    d. Researching and understanding the training that SWAT 1280 officers received in the use of the 40-mm launcher, the 40-mm BIP munitions, the Eotech optical sight, and use-of-force reporting and other policies;

    e. Motion practice in connection with Defendants' Motion to Dismiss and my Motion to unseal the complaint and for re-designation of materials previously marked confidential;

    f. Obtaining, dissecting and analyzing all medical and media coverage regarding MPD's use of force following George Floyd's murder;

4

g. Identifying, retaining and consulting with experts to prosecute the case and help prove my injuries and damages;

h. Legal research on many issues, including, but not limited to, staying up to date on Section 1983 opinions relating to supervisory liability;

i. Drafting numerous lengthy Complaints;

j. Preparing for my deposition, many depositions of MPD officers, and lay witnesses;

k. The taking of depositions, including that of Defendant Ryan McCann, whose deposition I attended, which made me aware of how the BWC evidence was used to piece together the identity of my shooter;

l. Capturing video and photographic damage evidence with professional photographers;

m. Drafting two detailed mediation submissions; and

n. Drafting letters requested by Magistrate Judge Leung for both case status updates and the inapplicability of the Minnesota Government Data Practices Act to my federal lawsuit.

11.  All of this required several RK civil-rights attorneys to work on my case, given the number of tasks involved and their complexity and scope.

12. The RK civil-rights team has informed me that they are of the opinion that the combination of the facts of the case, my steadfastness, my nature, my choice of counsel, the legal work described above, and our persistence in fighting the over-designation of discovery (particularly the BWC videos) as confidential, created the catalyst for settlement of this matter and the amount obtained.

13. As I understand it, the Rule 68 Offer arrived *the day after* Kathryn Bennett's oral argument on my Motion to Unseal and for Re-designation.

14. I recognize that the RK civil-rights team's exceptional work on this case and their experience and their track record in civil-rights cases – and deadly force cases in particular – was instrumental in obtaining the Rule 68 Offer allowing me to secure a $2.4 million judgment against Defendants Benjamin Bauer, Ryan McCann and Matthew Severance, to be paid by the City of Minneapolis.

15. I understand that RK has petitioned the court for $1,481,258.00 in fees and $31,934.60 in costs in relation to the prosecution of my civil rights. I believe these are reasonable fees and costs to be paid to my attorneys. I fully support the requested amounts, which I believe my attorneys have earned, and I ask that the Court award them in full.

6

16. The request attorneys' fees are, in my judgment, reasonable and in accordance with the factors set out in Rule 1.5 of the Minnesota Rules of Professional Conduct, which my attorneys have fully explained to me. I understand the eight factors to be considered are:

    i.    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

    ii.    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

    iii.    the fee customarily charged in the locality for similar legal services;

    iv.    the amount involved and the results obtained;

    v.    the time limitations imposed by the client or by the circumstances;

    vi.    the nature and length of the professional relationship with the client;

    vii.    the experience, reputation, and ability of the lawyer or lawyers performing the services; and

    viii.    whether the fee is fixed or contingent.

17. Of particular importance to me in determining reasonability were factors 1, 3, 4, 6, 7 and 8. With regard to factor number 1, the RK civil-rights team had the skills to perform the services properly and the ingenuity to deal with the difficulties presented in Section 1983 lawsuits – particularly deadly force cases. I

am aware that few lawyers in Minnesota have done so successfully once, let alone a number of times.

18. Further, Bob and his team are well-known to the City of Minneapolis. *See* Exhibit 2, April 15, 2018 Star Tribune Article, attached hereto.

19. With regard to factor number 3, I was informed that a 40% contingent fee, inclusive of the fee split with Mr. Kreps, was not atypical for such representation in this difficult and specialized area. The agreement was acceptable to me and I agreed to it in writing at the outset of the representation. Further, as I understand it, similar awards have been approved by Judges in this District.

20. With regard to factor number 4, I believe that $2.4 million is the highest result stemming from the police action in Minneapolis in the aftermath of George Floyd's murder (not including any award of Section 1988 fees and costs). Given that, the difficulty of these cases and past settlements in similar cases in Minnesota, I am pleased with the result.

21. With regard to factor number 6, I was well represented and counseled throughout this entire matter, even during times of emotional and physical healing and distress.

22. With regard to factor number 7, I believe now, as I did when I hired RK and Mr. Kreps, that I was hiring people with vast experience, fine reputations, and excellent ability to perform the legal services to me.

23. With regard to factor number 8, the fee was contingent.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 1st day of April, 2022.

*Soren Stevenson*